THOMAS M. CARTER, Respondent, v. THE BROOKLYN LIFE INSURANCE COMPANY, Appellant.

The payment of each annual premium constitutes a "renewal" of a policy of life insurance within the meaning of the act of 1876 (Chap. 341, Laws of 1876, amended by chap. 321, Laws of 1877), declaring that no life insurance company of this state "shall have power to declare forfeited or lapsed any policy, thereafter issued or *renewed*, by reason of non-payment" of premium, unless a notice containing certain particulars specified "shall have been duly addressed and mailed by the company * * * to the insured * * * at his or her last known post-office address, not less than thirty, nor more than sixty days before such payment becomes due."

Said act, therefore, applies to a policy issued before the passage of the act, but renewed thereafter by the payment of premiums as they fell due.

Defendant in 1870 issued a policy of insurance upon the life of plaintiff who resided in the city of A., Georgia, which provided for its forfeiture in case of non-payment of premiums on or before the day specified. Previous to the passage of said act the defendant, at plaintiff's request, had been in the habit of sending receipts in anticipation of payment to the C. R. & B. Co. in said city for collection, and plaintiff paid the premiums to that company. After the passage of that act defendant sent to plaintiff, at his address at A., a copy of the law and a notice thereon stating that "notices will be sent as required by statute" and that "all premiums are due and payable at the office in New York," and these notices were repeated on all subsequent premium receipts sent to plaintiff. Thereafter plaintiff remitted the premiums direct to defendant at its office in New York. In each of the years 1878 and 1879 defendant mailed the required notices addressed to plaintiff at his said place of residence. In 1880 and thereafter, without any authority from plaintiff, the notices were addressed to plaintiff, care of the C. R. & B. Co. The notices were received by that company and delivered to plaintiff up to 1883, who paid the premiums direct to defendant. The notice for 1883 was not delivered, plaintiff did not pay the premium when due, and upon tendering it thereafter defendant refused to receive it and claimed the policy forfeited. In an action to compel defendant to accept the premium and reinstate the policy, *held*, that even conceding the said statute did not apply, plaintiff had a right to rely upon the assurances expressed upon its notices thereafter sent that it did so apply and that annual notices would be sent, and defendant was estopped thereby; that it was incumbent upon defendant to show a compliance with the statute; that by sending the notices to the C. R. & B. Co. defendant made that company its agent to deliver them, and took the risk of a failure on the part of such agent to perform its duty; that plaintiff was under no obligation to object to any mode of sending the notices so long as he actually received them in time; and that, therefore, no such notice was given as the statute required, and defendant had no right to declare the policy forfeited.

(Argued April 30, 1888; decided June 5, 1888.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made the first Monday of January, 1885, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought to compel the defendant to accept a payment of premium upon a policy of insurance issued by

it upon the life of plaintiff and to reinstate the policy which it had declared to be forfeited.

The facts, so far as material, are stated in the opinion.

*William H. Ford* for appellant. The time of payment of premiums was material, and the essence of the contract and a failure to pay on the day when due involved an absolute forfeiture. (*Howell* v. *Knickerbocker Life Ins. Co.*, 44 N. Y. 276; *N. Y. Life Ins. Co.* v. *Statham*, 93 U. S. 24; *Robertson* v. *Metropolitan L. Ins. Co.*, 88 N. Y. 541.) And that without notice of forfeiture or intent to claim forfeiture. (*Roehner* v. *Knickerbocker Life Ins. Co.*, 63 N. Y. 160; *Baker* v. *Mutual Life Ins. Co.*, 43 id. 283; *Wheeler* v. *Connecticut M. L. I. Co.*, 82 id. 543.) A court of equity will not relieve from such forfeiture when the contract is free from fraud or mistake. (*Attorney-General* v. *N. A. Life Ins. Co.*, 82 N. Y. 172, 190–192; 83 id. 492; *Holly* v. *Metropolitan Life Ins. Co.*, 105 id. 437, 444.) The defendant was not required by the statute of 1876, as amended (Laws of 1887, chap. 321), to give the plaintiff notice of the time when the premiums due October 25, 1883, became due. (*Wyman* v. *Ins. Co.*, 45 Hun, 184.) Whether the defendant was or was not required to give notice in 1883, either by the statute or by its previous practice or custom, it made a perfect defense to this action, by proving on the trial that it gave a notice in 1883 which complied both with the statute and with its previous custom. (*Phelan* v. *N. W. Mut. Life Ins. Co.*, 42 Hun, 419.) The plaintiff having for three years preceding 1883 received notices addressed to him at the same place, and having each year been requested to inform defendant if the address was not correct, and not having informed defendant, is estopped from alleging that the notice of 1883, addressed to him in the same manner, was not addressed to him at his post-office address. (*L'Amoreux* v. *Vischer*, 2 N. Y. 281; Broom's Legal Maxims [6th Am. ed.] 105, 223, 515; 6 Wait's Actions and Defenses, 683; *Hall* v. *Fisher*, 9 Barb. 17;

*Niven* v. *Belknap,* 2 Johns. 573 ; *Hogan* v. *City of Brooklyn,*
52 N. Y. 282.) In order to make a tender before suit brought
available, the party alleging the tender must pay the money
into court and allege the fact in pleading. (*Becker* v. *Boon,*
61 N. Y. 317 ; *Wilder* v. *Seelye,* 8 Barb. 408 ; *Cass* v.
*Hegenbotam,* 27 Hun, 406 ; *Howard* v. *Hayes,* 47 Supr.
Ct. R. 89–103.)

*Raphael J. Moses, Jr.,* for respondent.

RUGER, Ch. J. The plaintiff is a resident of the city of
Albany, in the state of Georgia, and the defendant a life
insurance company located and doing business in the city and
state of New York. In the year 1870 the defendant issued
and delivered to the plaintiff an insurance policy upon his life
for $5,000, " in consideration of the representations and agree-
ments contained in the application therefor, and of the sum
of twenty-one dollars and ninety-five cents to them in hand
paid    *    *    * • and of the annual payment of eighty-two
dollars and eighty cents to be paid on or before the twenty-
fifth day of October in each and every year during the con-
tinuance of the policy," and providing that " in case the said
Thomas M. Carter shall not pay or cause to be paid the pre-
miums, as aforesaid, in cash on or before the day herein
mentioned for the payment thereof,    *    *    *    then the said
company shall not be liable for the payment of the sum assured
or any part thereof, and this policy shall cease and be null,
void and of no effect." A notice was printed upon the policy
stating, among other things, that " premiums must be paid on
or before the day when due,    *    *    *    and if the premiums
be not settled when due, a policy becomes forfeited." That
" all premiums are due and payable at the office of the com-
pany in the city of New York, but for the convenience of
policyholders residing at a distance, it may be paid to an agent,
but only on the production of a receipt signed by the president
or secretary, who are alone authorized to sign receipts on the
part of the company.    *    *    *    In all cases notices will be

sent as regularly as possible, but solely as a matter of courtesy; as these often miscarry from a variety of causes, it is absolutely necessary that a policyholder should make particular note of the dates when his premiums come due, for the company will not be responsible for any omission or miscarriage of notice."

The annual premiums upon this policy were regularly paid by the insured to the company from the date thereof to October, 1883, and upon the non-receipt of the premium for that date the company declared the policy forfeited and assumed to cancel the same upon its books. The defendant did not give the plaintiff either prior or subsequent notice of the time when such premium became due or the place where payable, as provided by chapter 341 Laws of 1876, and the amendment thereto by chapter 321, Laws of 1877. Previous to the year 1878, the defendant, at the request of the plaintiff, was in the habit of sending receipts in anticipation of the day of payment to the Central Railroad and Banking Company at Albany, in Georgia, for collection, and the plaintiff regularly paid such premiums to that company, taking up the receipt therefor held by it.

In September, 1876, after the passage of chapter 341 of the laws of that year, the defendant sent the plaintiff to his address at Albany, Georgia, a copy of such law and a notice thereon indorsed stating that "notices will be sent as required by statute," and that "all premiums are due and payable at the office in New York." These notices were repeated upon all subsequent premium receipts sent to the plaintiff. After this time the plaintiff was in the habit of remitting premiums directly to the company at New York.

In each of the years 1878 and 1879 the defendant transmitted notices of the time for the payment of premiums addressed to Thomas M. Carter, Albany, Georgia. In 1880, however, without any authority from the plaintiff, the company assumed to change the address upon the notices sent to him from that theretofore employed to "Thos. M. Carter, care of the Central Railroad and Banking Co., Albany, Georgia." These notices were received by that company and were regu-

larly delivered by it to the plaintiff for the years 1880, 1881 and 1882, and he regularly paid the annual premiums on the policy at the company's office in New York for those years. The notice for the year 1883 was not, however, delivered to the plaintiff. Upon this state of facts several questions arose upon the trial, among which, the material ones are:

*First.* Whether the law of 1876, requiring notices to be sent to policyholders, applies to this policy?

*Second.* Whether the assurance expressed by the defendant upon its notices thereafter sent to the plaintiff, that it did so apply, authorized him to act in reliance thereon and estopped the defendant from claiming that it did not apply to such policy; and

*Third.* Whether the notice sent by the defendant in 1883, conformed, in respect to the manner of its transmission, to the requirements of such law?

It is contended by the appellant that the act applies only to policies "issued or renewed" after its passage, and that a policy cannot be said to have been renewed unless it has become forfeited or lapsed, and has been afterward restored or reinstated by the company.

The language of the statute, as expressed in the Laws of 1876, is that "no life insurance company, doing business in the state of New York, shall have power to declare forfeited or lapsed any policy thereafter *issued or renewed*, by reason of non-payment of any annual premiums, or interest, or any portion thereof, unless a notice in writing stating the amount of the annual premium or interest due, and when due on such policy, and the place where said premium or interest may be paid, shall have been duly addressed and mailed by the company issuing such policy to the insured, postage paid, at his or her *last known post-office address*, not less than thirty nor more than sixty days next before such payment becomes due according to the terms of such policy." This act was amended by chapter 321, Laws of 1877, but, so far as this case is concerned, in no respect rendering a particular notice of the amendment necessary. The act should be construed

according to the popular signification of the language used, and with the view of securing to the policyholders in life insurance companies the benefits contemplated by the legislation.

That the defendant supposed the law applied to the policy held by the plaintiff plainly appears from the notices indorsed by it upon each receipt thereafter issued and sent to him. The company, instead of sending notices under the clause of the policy which provided for them, as an act of courtesy, assumed that he was entitled to them as matter of right, and informed him that the notices required by the statute would be sent, and in case he changed his post-office address, requested notice of such change to be given to it. The defendant must have referred to this statute, as there was no other requiring the service of notice, and the plaintiff had a right to rely upon the assurance that the defendant thus gave him of annual notices for the payment of premiums. (*Ins. Co.* v. *Eggleston,* 96 U. S. 572.)

We are also of the opinion that the payment and receipt by the company of each annual premium, constituted a renewal of the policy within the meaning of the term "renewed," as used in the act.

While it was provided by the policy that it should continue for the term of the natural life of the insured, it was expressly provided that this was upon the condition that he should pay the annual premiums as they became due by the terms of the policy. A failure to pay such premiums ·in any year was declared to render the policy null, void and of no effect, but when paid it continued, by force of such payment, the policy in existence for the period of another year. This process each year revived or renewed the policy as it approached the period of its agreed termination.

It is not according to the popular notion of the meaning of the word "renewal" that it can take place only after the death or expiration of the subject to which it is applied. Thus, to renew a note, a lease or a contract, it is not essential to wait until they have respectively expired, for after that time it

would be practically impossible to renew them. A new note or lease may be made or contract created, but they would have force and effect from the new creation, and not from the original agreement. To renew, in its popular sense, is to refresh, revive or rehabilitate an expiring or declining subject, but is not appropriate to describe the making of a new contract or the creation of a new existence. (Webster's Dictionary, Worcester's Dictionary.) It would be at the option of an insurance company to re-execute a forfeited contract of insurance, and if the act was held applicable to such a policy alone, it would confer no legal right whatever upon a policy-holder. It was the evident object of the act to make it apply to some existing policies and confer some legal right upon their holders to avoid a cause of forfeiture; and if it be held to apply only to lapsed policies, it leaves it entirely optional with the company whether there should ever be any renewed policies thereafter or not.

We are, therefore, of the opinion that the plaintiff's policy was renewed within the meaning of the act. We are also of the opinion that no such notice was given to him as the statute required. The law reads that the notice should be sent to the assured at his known place of address, and there is no claim but that the defendant knew his place of address at all times subsequent to the year 1880. It would, of course, be competent for him to agree upon some other mode of address, but, in the absence of such an agreement, the defendant was not at liberty to adopt another address by which the notice might or might not reach him. The plaintiff had never changed his post-office address, or notified the defendant that he intended to do so. It sent the notice to the Central Railroad and Banking Company without authority from him, and thereby made that company its agent to deliver it. It took the risk of its delivery and assumed the consequences of a failure upon the part of its agent to perform the duty intrusted to it. The plaintiff was under no obligation to object to any mode of sending such notices which was effectual to accomplish their object, for so long as he actually received the

Statement of case.

notices in time, he had no cause for complaint. The statute, however, imposed the duty upon the defendant of sending the notices to the plaintiff in a particular manner, and when it did so it acquired the right to declare a policy forfeited for non-payment of the stipulated premiums. It was, therefore, incumbent upon the defendant to show that it had complied with the terms of the statute, and it did not do this by showing a delivery of a notice to another person than the plaintiff. Such notice gave it no right to declare the policy forfeited, and in doing so it acted illegally. The criticism made by the defendant upon the sufficiency of the plaintiff's offer to pay the premium due in 1883 is untenable. The answer admits the receipt by the defendant of the draft for that sum remitted by the plaintiff, and makes no question as to the amount thereof, or as to the mode in which the tender was made. It is now quite too late to raise this question.

For the reasons stated, we think the judgment of the courts below should be affirmed.

All concur.

Judgment affirmed.